# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MCILVAINE, INC., et al.,                 )        CASE NO. 5:12CV2726
                                         )
                                         )
            PLAINTIFFS,                  )        JUDGE SARA LIOI
                                         )
vs.                                      )        **MEMORANDUM OPINION**
                                         )        **AND ORDER**
SEYMOUR TRANSPORT, INC., et al.,         )
                                         )
                                         )
            DEFENDANTS.                  )

Before the Court is plaintiffs' motion to remand and for attorney fees and costs. (Doc. No. 17.) Defendants filed a memorandum in opposition (Doc. No. 19) and plaintiffs filed a reply (Doc. No. 20). For the reasons discussed herein, the motion is **GRANTED in part**. This case will be remanded; however, no attorney fees or costs will be awarded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2012, plaintiffs McIlvaine, Inc., McIlvaine Trucking, Inc., McIlvaine Trucking International, Inc., (collectively, "McIlvaine"), Logistics Leasing Systems, Inc. ("Logistics"), and Fleet Maintenance Services, LLC (collectively, "plaintiffs") filed a complaint in the Wayne County Court of Common Pleas against defendants Seymour Transport, Inc. ("Seymour") and Grammer Industries, Inc. ("Grammer") (collectively, "defendants").[1]

---

[1] Plaintiffs apparently amended the complaint on or about October 11, 2012 (*see* Motion at 98), prior to defendants' removal of the case. Although defendants filed in this Court an answer to that amended complaint, along with a counterclaim (Doc. No. 6), no one has made the amended complaint available to this Court as part of the record. In their opposition to the motion to remand, defendants state that the amended complaint is identical to the complaint, except for the addition of an exhibit inadvertently omitted from the original complaint. (Opposition at 115, n.2.) Therefore, by necessity, all references herein to the complaint are to the original complaint attached to the notice of removal. (Doc. No. 1-1.)

The complaint alleges that, on October 5, 2007, Charles L. Whittington of Seymour, sent a letter to Kim Marty of McIlvaine (the "Letter") purporting to be "a binding agreement [for] future sales or leasing of MC331 trailers by McIlvaine Trucking or any other related entity to the management or ownership of McIlvaine[.]" (Compl. [Doc. No. 1-1] ¶ 9.)[2] The Letter was purportedly signed on October 9, 2007 by Kim Marty on behalf of McIlvaine. (*Id*. ¶ 10.) Defendants assert that the Letter gives them a right of first refusal with respect to the sale of MC331 trailers owned by Logistics. (*Id*. ¶ 13.) Logistics claims that "it is presently marketing and intends to sell[ ]" its MC331 trailers, although previous attempts have allegedly "failed during negotiations, in part, on account of the Defendants' purported right of first refusal." (*Id*. ¶¶ 11, 12.) Plaintiffs allege that the Letter is not an enforceable contract because it "lacked consideration[,]" because Kim Marty, "who allegedly signed the Letter, lacked authority to enter into any such agreement on behalf of the Plaintiffs[,]" and because the Letter "fails to properly identify any of the Plaintiffs." (*Id*. ¶¶ 14, 15, 16.) The two-count complaint seeks solely declaratory judgments that the Letter is not an enforceable contract and does not grant defendants a right of first refusal with respect to the sale[3] of MC331 trailers by Logistics.[4] The complaint seeks no damages, although it does ask for reasonable attorney fees and court costs.

---

[2] The complaint states that a copy of the Letter is attached thereto; it is not. The Letter is, however, attached to the answer. It provides, in its entirety, as follows:

> Dear Mr. Marty:
>
> This letter will serve as a binding agreement for future sales or leasing of MC331 trailers by McIlvaine Trucking or any other related entity to the management or ownership of McIlvaine.
>
> Grammer Industries, Inc./Seymour Transport, Inc. will be granted the first right to purchase or lease MC331 trailers offered by McIlvaine. If for some reason the equipment pricing is deemed unacceptable by Grammer/Seymour they will have 24 hours to match any sales offer by some other party.

(Doc. No. 6-1.)

[3] The Letter actually is written in terms of "sales or leasing" of the trailers. Solely for convenience herein, the Court will consistently refer only to the "sale" of trailers.

On October 31, 2012, defendants removed the case to this Court, asserting diversity jurisdiction. There is no question that the parties are diverse in citizenship. The dispute for purposes of the motion to remand is whether defendants have established the requisite amount in controversy.

Plaintiffs filed the instant motion asserting that defendants have not met their burden of establishing the requisite amount in controversy to support diversity jurisdiction under 28 U.S.C. § 1332.

## II. DISCUSSION

### A.    Controlling Law -- Remand and Amount in Controversy

"When ruling on a motion to remand, a court generally looks to the plaintiff's complaint, as it is stated at the time of removal, and the defendant's notice of removal." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).[5] The burden is on the removing defendant to establish diversity jurisdiction, including the amount in controversy, by a preponderance of the evidence. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *overruled on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010). "The removal petition is to be strictly construed, and the district court must resolve all disputed questions of fact . . . in favor of the non-removing party." *Bartelmay v. Body Flex Sports, Inc.*, No. 4:13cv767, 2013 WL 3149598, at *2 (N.D. Ohio June 18, 2013) (citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). Further, "[a]ll doubts as to the propriety of removal are

---

[4] The complaint does not clarify how the various plaintiffs are related to one another.

[5] Defendants' argument that the amount of damages on their counterclaim alone meets the jurisdictional requirement has no merit. *See Sanford v. Gardenour*, No. 99-5504, 2000 WL 1033025, at *3 (6th Cir. July 17, 2000) ("'the traditional rule has been that no part of the required jurisdictional amount can be met by considering a defendant's counterclaim' to satisfy the amount in controversy requirement for removal jurisdiction purposes") (quoting Wright & Miller, 14C Fed. Prac. & Proc. Juris. 3d 3725 (1998)).

resolved in favor of remand." *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007) (citations omitted).

Questions regarding the propriety of removal may involve both facial and factual inquiries. *Gentek Bldg. Prods.*, 491 F.3d at 330. A district court engages in a factual inquiry "only when the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's claim." *Id*. In the instant case, the dispute over whether the amount in controversy is met by the facts in the record does not implicate the underlying merits of whether or not the Letter is an enforceable contract. Therefore, to the extent necessary to determine whether the jurisdictional amount is proven, the Court is permitted to engage in "a summary-judgment-like procedure[.]" *Id*.; *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (the district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts[,]" without turning the motion to remand into one for summary judgment).

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (holding that the value of an injunction striking down a state law was equal to "the losses that will follow from the statute's enforcement"). The Sixth Circuit has said that, "[w]here a party seeks a declaratory judgment, 'the amount in controversy is . . . the value of the consequences which may result from the litigation.'" *Lodal, Inc. v. Home Ins. Co. of Ill.*, No. 95-2187, 1998 WL 393766, at *2 (6th Cir. June 12, 1998) (quoting *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 399 (2d Cir. 1975)); *see also Goldsmith v. Sutherland*, 426 F.2d 1395, 1398 (6th Cir. 1970) ("in injunction

actions, the amount in controversy is not the amount that the plaintiff might recover at law, but rather the value of the right to be protected or the extent of the injury to be prevented.").

The Sixth Circuit "has yet to decide whether [it] view[s] the amount in controversy from the perspective of the plaintiff or the defendant." *Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 n.1 (6th Cir. 2009); *see also Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (noting the circuit split as to whether a court may consider either viewpoint or only the plaintiff's).

**B.     Analysis -- Amount in Controversy**

Plaintiffs argue that both district courts in Ohio value the amount in controversy in a declaratory relief action from a plaintiff's viewpoint. (Motion at 101-02, citing *Garbaccio v. Columbia Gas Transmission Corp.*, 289 F. Supp. 2d 903, 905 (N.D. Ohio 2003); *Perotti v. Black & Decker (U.S.) Inc.*, 205 F. Supp. 2d 813, 818 (N.D. Ohio 2002); *Buckeye Recyclers v. CHEP USA*, 228 F. Supp. 2d 818, 821 (S.D. Ohio 2002).) Defendants reject this argument, asserting that the Court may look to either party's viewpoint and, "so long as the amount-in-controversy requirement is satisfied under at least *one* party's view, the Court has jurisdiction . . . ." (Opposition at 112.)

The Court concludes that it need not decide whose viewpoint should be relied upon because defendants have failed to establish the jurisdictional amount from *either* viewpoint.

The "object of the litigation" from plaintiffs' viewpoint is the complete elimination of the Letter as a controlling document. If plaintiffs succeed, any rights that defendants might have had under the Letter would be eliminated. Then, each time plaintiffs seek to sell one of the MC331 trailers, although defendants would have the option of offering to buy,

they would not have any right of first refusal.[6] There is nothing in the record that would definitively show what a possible sale value might be under that scenario. There is nothing in the Letter that commits plaintiffs to the sale of a particular number of MC331 trailers. However, if the Court presumes, for purposes of this analysis, the sale of at least one MC331 trailer, and if the Court credits the values in Whittington's undisputed declaration, the sale of a single trailer *could* net plaintiffs an amount as high as $150,000 (a sufficient amount), or as low as $20,000 (an insufficient amount). (*See* Whittington Decl. ¶ 8.) Arriving at a definitive amount, however, requires pure speculation about numerous factors that are not determinable in advance, for example, how many trailers might be sold, whether each trailer sold is new or used, what price would be negotiated within the possible range of prices for new or used trailers, whether defendants would accept that price or decide to match a third party's offer, etc.

Strangely, defendants do not seem to recognize the speculation they are asking from this Court. In fact, they actually argue that this Court should deny the motion because it should "abstain from delving into theoretical possibilities and what-if scenarios." (Opposition at 115.) They rely upon *Wright v. Sand Canyon Corp.*, No. 5:10CV2188, 2011 WL 1792815 (N.D. Ohio May 11, 2011), where plaintiffs unsuccessfully sought remand of their declaratory judgment complaint seeking to invalidate Sand Canyon Corporation's assignment of their mortgage to Wells Fargo Bank. Defendants argue that, in *Wright*, "[i]nstead of pondering the interconnectedness of the mortgage's payoff amount, the note amount, the appraised value of the home, the actual value of the home, the foreclosure value of the home, and the tangible and intangible costs of the foreclosure, the Court held that the amount-in-controversy was equal to

---

[6] In a declaration filed in support of the notice of removal, Charles Whittington, the President of both Seymour and Grammer, explains that MC331 trailers, also called MC331 cargo tanks, are used to transport federally regulated materials, a type of transport in which defendants specialize. (Whittington Decl.[Doc. No. 1-2] ¶ 7.)

the amount of the note." (*Id.*) Although defendants argue that *Wright* would prohibit remand of the instant case, they could not be more incorrect. In fact, it is defendants who are asking the Court to craft "what-if scenarios," by using the theoretical values in Whittington's declarations, applied to theoretical sale possibilities, to determine the theoretical parameters of an amount in controversy that is simply not apparent from the face of the complaint or anything in the record. In *Wright*, there was a discernible amount in controversy; here, there is not.

Alternatively, the "object of the litigation" from defendants' viewpoint would be the retention of the Letter as a controlling document and a finding that the Letter grants defendants a right of first refusal to the sale of any of plaintiffs' MC331 trailers.[7] Presumably, that would mean that (1) plaintiffs would set a price with their potential buyer; (2) plaintiffs would give defendants the right of first refusal; (3) defendants would either agree to pay the price plaintiffs sought, or would agree to match another buyer's offer. The "value of the object of the litigation" in that instance would be only the *difference* between the price plaintiffs sought and the price they eventually agreed to (presuming the latter was lower than their asking price). *See, e.g.*, *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250 (6th Cir. 2011) ("the monetary consequences" resulting from a victory for the plaintiffs would be the difference between the $100,000 they sought and the $25,000 the insurer offered). Again, there is nothing in the record to suggest what these amounts might be and the Court cannot speculate.

Accordingly, to the extent Doc. No. 17 seeks an order of remand for failure to meet the jurisdictional amount in controversy, it is **GRANTED**.

---

[7] In their argument that the amount in controversy requirement is met, defendants claim that "the value of the agreement regarding the 68 trailers *to Defendants* was at least $651,499.84 (i.e., Defendants stood to gain about $9,500 in resale profit per trailer)." (Opposition at 114.) As above, this valuation relies entirely on theoretical values of theoretical sales, none of which are required by the Letter. The fact is, the Letter does not entitle defendants to a single purchase from plaintiffs, so basing the amount in controversy on any amount of sales under the Letter is pure speculation.

### C.    Attorney Fees and Costs

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." By its terms, the statute "authorizes courts to award costs and fees, but only when such an award is just." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*. at 141.

Here, although plaintiffs sought both remand *and* an award of attorney fees and costs, they made not a single word of argument in support of the latter request. The Court cannot conclude that defendants' removal lacked an objectively reasonable basis. In fact, here, as in *Martin*, *supra*, the objective reasonableness of the removal is a "close question." *Id. See also Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1060-61 (6th Cir. 2008).

In making this determination that an award of fees and costs would be inappropriate in this case, the Court is guided by the discussion in *Martin* of the "large objectives" of § 1447(c), namely, both "avoiding deterrence of proper removals[]" and "reduc[ing] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Martin*, 546 U.S. at 140-41.

Accordingly, to the extent Doc. No. 17 seeks an award of attorney fees and costs, it is **DENIED**.

### III. CONCLUSION

For the reasons set forth herein, plaintiffs' motion to remand is **GRANTED**, but the request for attorney fees and costs is **DENIED**.

8

This case will be remanded to the Wayne County Court of Common Pleas.


**IT IS SO ORDERED**.

Dated: October 16, 2013

                                                    _____
                                                    **HONORABLE SARA LIOI**
                                                    **UNITED STATES DISTRICT JUDGE**